1         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF COLORADO
2
   Criminal Action No. 08-cr-00378-MSK
3
   UNITED STATES OF AMERICA,
4
        Plaintiff,
5
   vs.
6
   JOE CAMACHO,
7
        Defendant.
8
   _____
9
                    **REPORTER'S TRANSCRIPT**
10                  (Sentencing Hearing:  Order)

11 _____

12         Proceedings before the HONORABLE MARCIA S. KRIEGER,

13  Judge, United States District Court for the District of

14  Colorado, occurring at 9:17 a.m., on the 17th day of February,

15  2010, in Courtroom A901, United States Courthouse, Denver,

16  Colorado.

17                         **APPEARANCES**

18         JUDY SMITH, Assistant U.S. Attorney, 1225 17th Street,

19  Suite 700, Denver, Colorado, 80202, appearing for the

20  plaintiff.

21         LAFONDA JONES, Assistant Federal Public Defender , 633

22  17th Street, 10th Floor, Denver, Colorado, 80202, appearing for

23  the defendant.

24   Proceeding Recorded by Mechanical Stenography, Transcription
       Produced via Computer by Paul Zuckerman, 901 19th Street,
25        Room A259, Denver, Colorado, 80294, (303) 629-9285

1        (The following proceedings were had and entered of record
2   after the Court heard the arguments of counsel and statement of
3   defendant:)
4            *THE COURT:*  Thank you.
5            Then I'll announce the sentence I intend to impose
6   here.  Of course, Counsel, you'll have a final chance to make
7   legal objections before judgment is actually entered.  And if
8   you believe that the Court has premised its determination on
9   error or I've raised an issue that you haven't had an adequate
10  opportunity to consider, to research, or to present, please
11  request a continuance.  I'm glad to grant your motion.
12           Imposition of a sentence in a federal criminal case is
13  governed by a number of statutes.  The umbrella statute is 18
14  U.S.C. Section 3553.
15           In imposing sentence in this case, the Court has
16  considered the objectives and the factors that are set forth in
17  Section 3553(a).  This provision requires that this sentence,
18  like all sentences, be sufficient but not greater than
19  necessary to satisfy a number of articulated objectives.  The
20  sentence must reflect the seriousness of the offense, promote
21  respect for the law, provide just punishment, adequately deter
22  criminal conduct, protect the public from further crimes by
23  this defendant, and provide this defendant with needed
24  educational or vocational training, medical care, or other
25  correctional treatment in the most effective manner.

1     In order to fashion a sentence that meets these
2  objectives, the statute directs the Court to consider the
3  nature and circumstances of the offense, the history and
4  characteristics of the defendant, the kinds of sentences that
5  are available, the sentence prescribed by the Federal
6  Sentencing Guidelines, the need to avoid unwarranted sentence
7  disparities among defendants with similar records found guilty
8  of similar conduct, and in the appropriate case the need for
9  restitution.
10     This case has a long sentencing history.  We've had
11 multiple sentencing hearings.  The Court has expressed at a
12 number of these hearings its concerns about the application of
13 the sentencing objectives and the Sentencing Guidelines due to
14 the unique circumstances of this case.  And I will outline how
15 those play into my sentencing determination in just a moment.
16     I have reviewed the documents found at Docket Nos. 55,
17 56, 57, 58, 59, and 60.  Counsel has confirmed that those are
18 all of the documents that they believe are relevant to this
19 determination.  I've considered the evidence that has been
20 presented -- or actually no evidence but argument presented
21 here in this sentencing hearing in making the determination
22 that's appropriate today.  And I note for the record two
23 things: (1) There has been no additional evidence presented
24 here at this sentencing hearing and secondly that the Court has
25 limited itself to the facts stated in the plea agreement for

1  the offense conduct.

2  The parties have no disagreement as to the contents of
3  the presentence investigation report or the subsequent addenda.
4  Similarly, they have no disagreement with the calculation of a
5  sentence as set forth in the presentence report under the
6  Federal Sentencing Guidelines.

7  The base offense level here for violation of 18 U.S.C.
8  Section 1470 is set by Sentencing Guidelines Section 2G3.1(a)
9  at 10.  There is an additional specific offense characteristic
10 that is applied pursuant to Section 2G3.1(b)(1)(e).  This is
11 because the offense involved distribution of materials to a
12 minor that were intended to persuade, induce, entice, coerce,
13 or facilitate the travel of the minor to engage in prohibited
14 sexual conduct.  And because of that, seven levels are added.

15 Then there are specific offense characteristics under
16 Section 2G3.1(b)(3).  There are two levels added because a
17 computer was used.

18 There are no victim-related adjustments, no
19 adjustments for role in the offense, no adjustments for
20 obstruction of justice.  The adjusted offense level results in
21 a level 19.

22 There is a downward adjustment for acceptance of
23 responsibility under Section 3E1.1(a) and (b).  A three-level
24 reduction is imposed.  This results in a total offense level of
25 16.

1             Then we turn to the defendant's criminal history.
2     There are no criminal history points.  That results in a
3     criminal history category of I.
4             With a criminal history category of I and an offense
5     level of 16, the guidelines recommend incarceration of 21 to 27
6     months, supervised release of two to three years.  The
7     guidelines make the defendant ineligible for probation, but the
8     Court notes the statutory probation period is one to five
9     years.
10            The fine range under the guidelines is $5,000 to
11    $50,000, and there is a mandatory statutory special assessment
12    of $100.
13            Pursuant to the terms of the plea agreement, there has
14    been no request for a departure under the guidelines and no
15    request for a variant sentence.  Nevertheless, the Court is
16    required to consider the objectives and the factors under 18
17    U.S.C. Section 3553(a) in order to satisfy itself that the
18    sentence truly is, as required by the sentence [*sic*], a
19    sentence that is sufficient but not greater than necessary to
20    satisfy the sentencing objectives.
21            Here the Court makes a number of findings based upon
22    the information that has been provided to it.  First the Court
23    notes that the conduct here as described in the plea agreement
24    involves Mr. Camacho contacting a 14-year-old girl, Lilly,
25    having e-mail conversations with her on sexual topics,

1   resulting in the transmission of video clips to her, inducing

2   her to engage in sexual behavior and inviting her to meet him

3   in order to engage in behavior.  The conversations, according

4   to the stipulated facts, occurred over approximately a

5   one-month period, December 5, 2007, through January 2, 2008.

6         During the largest portion of this period, Mr. Camacho

7   was located outside the United States in Angola, Africa.  He

8   was married at the time but physically separated from his wife.

9         It would appear from the facts that are contained in

10  the plea agreement that he terminated the conversation with

11  Lilly and that he -- this conversation -- and that his contacts

12  with Lilly were terminated prior to his return to the United

13  States, at which time he was arrested.

14        Since his arrest, he has been detained in one form or

15  another for 17 months.  He has spent four months in custody, a

16  period of time shortly after his arrest.  Then he was released

17  on bond and spent 13 months in a halfway house.  He violated

18  the terms and conditions and rules of the halfway house.  His

19  pretrial release was revoked, and he was re-detained in jail.

20        As best, the calculation here -- it appears he spent

21  13 months in a halfway house and four months in custody.

22  During this entire time period, he has been under the

23  supervision of both the probation department of this court and

24  for the bulk of it the supervision of the officials who run the

25  halfway house.  He has been barred from having any contact with

```
 1   minor children, including his own children, who are located in
 2   Texas.
 3           He has not adhered to the restrictions that have been
 4   placed on him in some respects.  He has driven a car without
 5   authorization, he's used a cell phone without authorization,
 6   and he's had unapproved contacts by phone with his minor son in
 7   Texas.  And that ultimately has resulted in his detention and
 8   the revocation of his conditions of release.
 9           This court expressed concern, as I said at a number of
10   junctures in the sentencing process.  My concerns were several:
11   first of all that under the terms of the applicable statutes,
12   if a term of imprisonment was imposed, the term of supervised
13   release was limited to three years by statute.  If the Court
14   imposed a variant sentence, it could impose supervision for up
15   to five years.  The Court was concerned as well that this was,
16   although a very serious crime, one of limited duration.  It did
17   not have the attributes that are often associated with internet
18   child-contact crimes.  There was no web-camming, there was no
19   physical display, there was no transmission of deviant sexual
20   information to the minor.
21           That is not a way of justifying what was done here.
22   It is a way of distinguishing the severity of what was done
23   here from other cases.
24           Now, the Court has the greatest respect for the
25   argument of the Government, and that is that the Court must be
```

1  concerned with protecting the safety of the public.  The Court
2  should be concerned with the behavior, the very serious
3  behavior, that Mr. Camacho engaged in, and the Court should be
4  concerned with sending a message that such behavior will not be
5  tolerated in society.
6         However, the Court is also concerned and must be
7  concerned under 18 U.S.C. Section 3553 with what best protects
8  the public and what sentence is, as the statute says,
9  sufficient but not greater than necessary to satisfy the
10 sentencing objectives.
11        It is for that reason that the Court expressed the
12 concerns that I did.  In the intervening months, the concerns
13 that I expressed about the predictive ability of courts and
14 experts to assess recidivism with regard to internet crimes has
15 come under greater scrutiny both by the Sentencing Commission
16 and also by judges.  I directed that Mr. Camacho be assessed by
17 a competent professional in order to assess the likelihood of
18 recidivism and what the appropriate treatment might be.  And
19 Dr. Brake prepared a sex-offense-specific mental health
20 evaluation which was filed in this case at Docket No. 59.
21        I've given that assessment a great deal of
22 consideration, and I think Counsel point out the critical
23 aspects of it.  On one hand, Mr. Camacho has displayed to the
24 professional some degree of denial, lack of cooperation,
25 perhaps self-denial or perhaps deceit with regard to his sexual

1  preferences and his sexual behaviors.  On the other hand,
2  Dr. Brake clearly states that he has a low number of factors
3  that distinguish his behavior and traits from those of normal
4  men.  What Dr. Brake states more than once in this report is
5  that there are not good predictive measures for the assessment
6  of risk associated with this kind of behavior, and he
7  recommends that further assessment in the form of polygraph and
8  other tools be used to assess that risk.
9         The Court derives from this that its primary objective
10 here in protecting the public is to assess the risk and prevent
11 Mr. Camacho from engaging in similar type of behavior.  That is
12 best served, I believe, by the longest period of supervision
13 that I can impose with appropriate conditions attached.
14 Recognizing that the supervision period associated with a
15 prison term and supervised release is only three years but the
16 supervision period and treatment period if I impose a term of
17 probation is five years, I believe that the objectives of 18
18 U.S.C. Section 3553(a) are best served by a probationary term
19 of five years with the terms and conditions recommended by the
20 probation officer plus the polygraph testing recommended by
21 Dr. Brake.
22        I do this without any approval of what Mr. Camacho
23 engaged in and with horror at such behavior but with the
24 recognition that he has been deprived of his liberty already
25 for 17 months and that he has been deprived of his contact with

1  his children without any assessment as to the likelihood that
2  he might harm them.
3          As a consequence, taking the entire pattern here, both
4  the conduct, the history, the circumstances, the sentences that
5  are available, and the sentencing objectives, I find that in
6  order to best deter criminal conduct, protect the public from
7  further crimes by this defendant, and to provide correctional
8  treatment in the most effective manner for the longest period
9  of time that a sentence of five years of probation with the
10 terms and conditions recommended by the probation officer and
11 by Dr. Brake is the sentence that is sufficient but not greater
12 than necessary.
13         Is there any further argument, objection, questions,
14 or need for clarification?
15         *MS. SMITH:*  Not from the Government, your Honor.
16 Thank you.
17         *MS. JONES:*  No, your Honor.
18         *THE COURT:*  Then pursuant to the Sentencing Reform Act
19 of 1984, having found the sentence -- found and determined the
20 sentence to be sufficient and not greater than necessary, it is
21 the judgment of the Court that the defendant, Joe Camacho, is
22 hereby sentenced to a term of probation of five years.
23         He has an outstanding child support obligation of
24 $42,958 or more at this current time, payable to the Texas
25 Child Support SDU.  It will be a condition of his probation

1  that he make payments on past due child support and current
2  child support obligations at the direction of his probation
3  officer.
4          He will not commit another federal, state, or local
5  crime, he will not possess a firearm as defined in 18 U.S.C.
6  Section 921, and he will comply with the standard conditions
7  that are imposed for supervised release.
8          The Court waives mandatory drug testing provisions of
9  18 U.S.C. Section 3583(d) because the presentence report
10 indicates a low risk of future substance abuse.  He will
11 cooperate in the collection of DNA as directed by the probation
12 officer, and he will comply with the requirements of the Sex
13 Offender Registration and Notification Act, 42 U.S.C. Section
14 16901*, et seq.*, as directed by the probation officer and any
15 state sex offender registration agency in a state where he
16 resides, works, or is a student or was convicted of a
17 qualifying offense.
18          He will participate in a program of mental health
19 treatment as approved by the probation officer until such time
20 as he is released from the program by the probation officer.
21 To the extent that he is able and directed to by the probation
22 officer, he'll pay for the cost of treatment.
23          He'll participate in an approved program of sex
24 offender evaluation and treatment.  This will include the
25 polygraph testing that was recommended by Dr. Brake and any

 1  other polygraph, plethysmograph, or Abel examination as
 2  directed by the probation officer.  He will, to the extent he
 3  is able to and directed to by the probation officer, pay for
 4  the cost of these evaluations and treatment.  And the Court
 5  authorizes the probation officer to release the psychological
 6  reports and evaluations as well as the presentence report to
 7  the treating agency for continuity of treatment.  He will
 8  comply with the rules and restrictions specified by the
 9  treating agency.
10       He will notify the probation officer of all computers
11  and/or internet access devices to which he has access.  He will
12  submit his person, his property, house, residence, vehicle,
13  papers, computer, and other electronic communications or data
14  storage devices or media and effects to search at any time.
15  And the Court authorizes passive monitoring of his computer use
16  in addition.
17       He will pay a special assessment of $100 which is due
18  and payable immediately.
19       The Court finds that he lacks the ability to pay a
20  fine and therefore does not impose a fine.
21       In clarification, the passive monitoring of computer
22  may include installation of software, hardware, or any other
23  means to monitor computer activities on the defendant's
24  computer or any computer that he is authorized to use.  The
25  software may record any and all activity on the computer,

1   including the capture of key strokes, application information,

2   internet use history, e-mail correspondence, and chat

3   conversations.  A notice will be placed on the computer at the

4   time of installation to warn others of the existence of the

5   monitoring software on the computer.  And the defendant will

6   not attempt to remove, tamper with, reverse-engineer, or in any

7   way circumvent the software or hardware installed on the

8   computer.

9           Ms. Jones, is your client prepared to have a location

10  where he can live if he's released from prison -- or I should

11  say from jail, at this point?

12          *MS. JONES:*  Your Honor, that's what I just asked him.

13  And right now, he does not have a place to go.

14          *THE COURT:*  What does the probation officer recommend

15  in these circumstances?

16          *THE PROBATION OFFICER:*  Your Honor, we would recommend

17  that he would reside in a placement, residential treatment or

18  residential reentry center, until we can find an approved place

19  for him.

20          *THE COURT:*  Any objection to that?

21          *MS. SMITH:*  No, your Honor.

22          *MS. JONES:*  No, your Honor.

23          *THE COURT:*  All right.  Then Mr. Camacho will be

24  released from custody but will reside under the supervision of

25  the probation department in a residential reentry facility

```
 1   until he has arrangements.
 2           THE PROBATION OFFICER:  He will probably need to be
 3   detained until we can get a bed space available.
 4           THE COURT:  How long do you think that will be?
 5           THE PROBATION OFFICER:  I can call this afternoon,
 6   your Honor; so hopefully it will be very quick.
 7           THE COURT:  Okay.  Then I'll supplement the judgment
 8   here to provide for his continued detention until bed space can
 9   be found at a residential reentry center.  And he will reside
10   there until he can locate a residence and until his computer,
11   if he has one at such residence, is appropriately modified to
12   contain the monitoring equipment.
13           Is there any further order that any party or the
14   probation officer needs at this point?
15           THE PROBATION OFFICER:  No, your Honor.
16           MS. SMITH:  Your Honor, I just wanted to address the
17   participation in the sex offender evaluation and treatment and
18   mental health treatment.  The conditions have been amended,
19   it's my understanding; and these were drafted before the
20   changes.  I would just ask that both of those conditions be
21   amended to read that the defendant shall participate and
22   complete those programs and that the defendant will follow the
23   terms and conditions of the program as though they were the
24   orders of the Court.
25           THE COURT:  Any objection?
```

1           *MS. JONES:* No, your Honor.

2           *THE COURT:* So modified.

3           Is there any bond -- I don't think we have a bond that
4    needs to be exonerated.

5           *MS. JONES:* No, your Honor.

6           *THE COURT:* All right. Then Mr. Camacho will be
7    remanded to the care and custody of the Marshal's Service.

8           Thank you, Ms. Smith for your argument and
9    presentation. I think this is a new area of the law, and it is
10   developing as we move forward; so I appreciate your briefing
11   with regard to this.

12          *MS. SMITH:* Thank you, your Honor.

13          *THE COURT:* Thank you, Ms. Jones, for your argument.

14          And I also thank our probation officer as well for the
15   multiple reports that we have received.

16          Yes, Ms. Jones.

17          *MS. JONES:* I have one question. And I know you
18   didn't address it, so I don't know if it wasn't addressed and
19   it's okay; but I just want to be clear about his contact with
20   his minor children. Is that something that will be addressed
21   in the evaluation, or does the Court --

22          *THE COURT:* I did not impose it as a specific
23   condition. It is a subset of whatever restrictions are imposed
24   by the treating agency.

25          *MS. JONES:* Okay.

1       *THE COURT:*  And I believe that's why Ms. Smith
2   requested that whatever restrictions were imposed be treated as
3   if they were the orders of the Court.
4       *MS. JONES:*  Great.  I just wanted to have that
5   clarified.  Thank you.
6       *THE COURT:*  All right.  I'm deferring to the
7   professionals with regard to that.
8       *MS. JONES:*  Me, too.
9       *THE COURT:*  All right.  I don't think there is
10  anything further we can do in this case today.  Thank you to
11  our Marshal's Service and our court staff as well.  We'll stand
12  in recess.
13      (Recess at 9:45 a.m.)
14                        *  *  *  *  *
15                     **REPORTER'S CERTIFICATE**
16     I certify that the foregoing is a correct transcript from
17  the record of proceedings in the above-entitled matter.  Dated
18  at Denver, Colorado, this 17th day of February, 2010.
19
20                                   *S/Paul A. Zuckerman*
                                     Paul A. Zuckerman
21
22
23
24
25